Date signed September 23, 2014



ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Baltimore

In re:                                              *

Baltimore Behavioral Health, Inc.        *        Case No. 12-32919-RAG
                                                             Chapter 11
      Debtor                              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION IN SUPPORT OF
### ORDER DENYING MOTION FOR RECONSIDERATION

**I.    <u>Preliminary Statement</u>**

This Memorandum Opinion in Support of Order Denying Motion for Reconsideration (Opinion) addresses the question of whether a party's failure to amend its request for administrative claimant status as instructed, failure to respond to objections to the request, and subsequent failure to appear at the hearing on the request, which then collectively leads to the request's denial, warrants reconsideration and the revival of the request. Under the circumstances of this case, the answer is 'no'.

**II.    <u>Background</u>**

This case was commenced by Baltimore Behavioral Health, Inc.'s (Debtor) filing of its voluntary petition (Petition) on December 28, 2012. The transactions and events that underlie

1

the present controversy occurred mainly before that date.  Ripe for decision at this juncture is JR Health Care's Motion to Reconsider and Vacate Order Denying Request for Administrative Claim (Motion to Reconsider) (Dkt. No. 208) filed on November 5, 2013.  By its Motion to Reconsider, JR Health Care, Inc. (JR) seeks (1) the vacatur of the Order Denying Request for Administrative Claim (Order) (Dkt. No. 203) entered on October 23, 2013 and (2) to be allowed a third bite at the evidentiary apple on its assertion that the sum of $149,903.13 (allegedly paid by JR to sustain the Debtor's failing operations) should be approved and paid with the favored status of an administrative claim pursuant to 11 U.S.C. § 503(b).[1]  Because (a) JR's original Motion for Allowance of Administrative Priority Claim (Administrative Claim Motion) (Dkt. No. 141) did not assert a sufficient *prima facie* case for an award of an administrative claim, (b) JR did not amend the Administrative Claim Motion when instructed to do so, (c) did not respond to well-taken objections lodged to the Administrative Claim Motion and (d) failed to appear at the final hearing on the same, the Motion to Reconsider will be denied.

On June 27, 2013, JR filed the Administrative Claim Motion.[2]  The Administrative Claim Motion alleged that the Debtor's then Chief Executive Officer, Terry Brown, had contacted one Jagan Mohan R. Arramraju in the late summer or early fall of 2012 and inquired whether Mr. Arramraju would be willing to assist in the management and financing of the Debtor's struggling

---

[1] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code), found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[2] JR, and three individuals presumably affiliated with it, had already filed a Complaint for Declaratory and Injunctive Relief (Complaint) to commence Adversary Proceeding No. 13-0052 (Adversary Proceeding). The Complaint described the same transactions and events included in the Administrative Claim Motion.  The two papers differ in that the Complaint sought to enforce rights of control allegedly arising from the parties' management agreement (to be described further on in this Opinion) while the Administrative Claim Motion sought administrative priority status for the alleged monetary outlay.  The Adversary Proceeding was consensually dismissed on November 21, 2013 (Adversary Proceeding at Dkt. No. 23).

health care facility.[3]  Discussions were allegedly had between Mr. Arramraju and the Debtor's

Board of Directors (Board) that culminated in a proposal being outlined by a representative of

the Debtor.  The proposal anticipated a line of credit being extended to the Debtor in exchange

for management positions and a share of the profits going forward.[4]

It is alleged that thereafter, in November 2012, Mr. Arramraju contacted JR's Chief

Executive Officer, J. Ram Ajjarapu, to learn if "he" (presumably meaning JR) had any interest in

providing financing for the Debtor.  A meeting was held between JR's representatives and those

of the Debtor and it is alleged that JR later agreed to supply the Debtor with funding if the

Debtor agreed to (a) enter into a management agreement acceptable to JR, (b) appoint JR's

agents to the Board and give them control of the Debtor's operations and (c) promptly file a

chapter 11 petition.  A Management Agreement (Agreement) was executed on December 19,

2012.[5]  Among other things, it provided that JR would supply financial investment "for

bankruptcy filings, attorney's fees and working capital of up to a maximum of $500,000 by way

of revolving [sic] line of credit, on commercially reasonable terms and at the sole and absolute

discretion of [JR]."  In line with that, the Administrative Claim Motion avers that "beginning on

or around December 28, 2012, [JR] assisted in the Chapter 11 case filing" and provided

$135,652.13 to the Debtor for employee wages, payroll taxes, insurance, Chapter 11 fees and

other miscellaneous costs.  JR also asserted that it incurred $14,251 in attorneys' fees and

expenses for a grand total of $149,903 in expenditures.

---

[3] For many years, the Debtor operated a mental health and drug rehabilitation facility in Baltimore.  Although unstated in the Administrative Claim Motion, it appears that Mr. Arramraju was affiliated with JR.

[4] It is unclear from the Administrative Claim Motion whether at this stage the proposal was intended for Mr. Arramraju individually or JR.

[5] A copy of the Agreement was attached to the Complaint as Exhibit 1 but was not provided with the Administrative Claim Motion, although it was referred to in its text as an exhibit.

The Petition was filed. However, as an attempt at reorganization, the case was doomed from its inception. Almost instantly, Debtor's new management structure disintegrated into acrimony as its former leadership allegedly attempted to rescind the Agreement and retake control. These events are neatly chronicled in the U.S. Trustee's Motion for Order Directing the Appointment of a Chapter 11 Trustee (Trustee Motion) (Dkt. No. 25) filed on January 31, 2013.[6] The Debtor quickly consented to the Trustee Motion and an order directing the appointment of a Chapter 11 trustee was entered soon thereafter (Dkt. No. 46).

The appointment of Mark J. Friedman, Esquire of DLA Piper as Trustee was approved on February 26, 2013 (Dkt. No. 61). Mr. Friedman's priority tasks were to (1) try and sell the Debtor's business as a going concern, (2) fend off the Debtor's landlord, West Pratt Holdings, LLC (West Pratt), from evicting the Debtor's operations and (3) generally bring order to chaos while maintaining the Debtor's precarious value. Ultimately, Mr. Friedman was able to buy the time to achieve a sale of substantially all of the Debtor's assets and that sale was approved by order entered on August 21, 2013 (Dkt. No. 174). The purchaser, free and clear of all encumbrances (save for those expressly assumed), was JR.[7]

However, in the midst of the onrush of paper through which the parties waged the battle surrounding the sale, JR filed the Administrative Claim Motion. Parties-in-interest were given until July 18, 2013 to object and the Administrative Claim Motion was scheduled for hearing on August 12, 2013 (Dkt. No. 154).[8] On July 16, 2013, Mr. Friedman filed his Opposition of

---

[6] The Department of Treasury, which holds a claim in excess of $8 million through the Internal Revenue Service, supported the Trustee Motion (Dkt. No. 33). The dissent that boiled beneath the Trustee Motion was also reflected by the fact that for a time, two different law firms asserted that each was authorized to represent the Debtor.

[7] Ronald M. Drescher, Esquire, counsel for JR in this matter, also represented JR in both the sale negotiations and the Adversary Proceeding.

[8] The August 12th hearing was rescheduled for August 14th, mainly because of the parties' ongoing efforts to amicably resolve the asset sale.

4

Chapter 11 Trustee to JR Health Care Associates, LLC "Motion for Allowance of Administrative Priority Claim" (Trustee's Opposition) (Dkt. No. 150). The Trustee opposed the Administrative Claim Motion for the following reasons:

>    (1)    JR was bound to, but did not, obtain advance court approval per Section 364(b) for the extension of credit asserted as the basis for its claim;

>    (2)    JR failed to provide an explanation of why applicable law supported the favored status that it sought;

>    (3)    JR could not assert that the claim produced a "substantial contribution" to the estate as it was expressly tied to JR's own self-interest; and

>    (4)    JR did not provide supporting documentation for any of the asserted payments.

On July 18, 2013, West Pratt filed its Response to Motion of JR Healthcare Associates, LLC for Allowance of Administrative Priority Claim (West Pratt's Response) (Dkt. No. 157). West Pratt contended that:

>    (1)    Since some, or all, of the advances were made before the case commenced, they could not be allowed as administrative expenses; and

>    (2)    Since the advances were made by an "insider" they could not have been made in the ordinary course of the Debtor's business and advance court approval had to be given (but was not) in order for allowance as administrative expenses.

JR did not file responses to either opposition. Several papers were scheduled for the August 14th hearing, the Motion for Administrative Claim among them. Because settlement discussions were ongoing, the parties asked for and received a further continuance of all matters. However, when the hearing began the Court stated in part as follows:

>    I've read through the [Administrative Claim] [M]otion, I've read through the responses. I haven't read the cases, but it seems to me that certainly the Respondents get much better [sic] the argument

at this level, if for no other reason than JR has not laid out a law-based reason to allow the allowance of the motion. So unless Mr. Drescher can talk me out of it, and I doubt that's going to happen, I'm going to intend to deny that motion without prejudice to them refiling it, to explain why, in a legal sense, the motion should be allowed.

Hr'g Tr. at 6, In re Baltimore Behavioral Health, Inc., Aug. 14, 2013, Dkt. No. 247.

In response, Mr. Drescher said, "Your Honor's comments are well taken. The Trustee and I had reached an agreement to postpone indefinitely the hearing on the [Administrative Claim] [M]otion…" *Id.* at 9. Wrapping up the housekeeping at the hearing's end, the Court decided to schedule the Administrative Claim Motion for hearing as opposed to postponing it "indefinitely." The following colloquy transpired:

> The Court: How about the 15th?
>
> Mr. Drescher: Yes, that would be great.
>
> *        *        *
>
> The Court: Yes, that's the hope. All right, so October 15th for the two –
>
> Mr. Drescher: Okay.
>
> The Court:  -- at 10 a.m.  October 15th at 10 a.m. for the two fee applications, and next week, August 20th at 3 p.m. for the sale motion, all right?

*Id.* at 14.

Contrary to the Court's admonition, the Administrative Claim Motion was neither supplemented nor amended. Nor did JR file replies to either the Trustee's Opposition or West Pratt's Response. In sum, when October 15th arrived, the record had not changed as to the Administrative Claim Motion. Then, when the case was called at 10:00 a.m., neither Mr. Drescher nor representatives of West Pratt were present in Court. The Court reiterated its concern over the Administrative Claim Motion's facial weaknesses. The Trustee indicated that

6

Mr. Drescher had sent him an email stating that he would attend the hearing but the Trustee also indicated that JR had never sought to discuss a resolution of the claim as a part of the sale process as Mr. Drescher had implied it would during the August 14th hearing.  Accordingly, the Administrative Claim Motion was denied by entry of the Order on October 23, 2013.  The Court wrote in the Order's margin, "JR Health Care Associates, LLC's Motion for Allowance of Administrative Priority Claim (Dkt. No. 141) (Motion) is denied as Movant neither amended the Motion as instructed at hearing [sic] on August 14, 2013, nor appeared at hearing [sic] on October 15, 2013 to prosecute the Motion."  Dkt. No. 203.

The Motion to Reconsider was filed on November 5, 2013.  In it, JR averred that, (1) Mr. Drescher's failure to appear was a result of excusable neglect under the standard enunciated in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380 (1993), (2) JR intended to argue that it had a claim for a "substantial contribution" under Section 503(b)(3)(D) and that the *In re On Tour,* LLC, 276 B.R. 407 (Bankr. D. Md. 2002) case (relied upon by the Trustee and West Pratt) actually[9] supported its claim and therefore it made a deliberate choice not to revise or supplement its papers, (3) JR intended to "supplement" its papers through live testimony at the hearing and (4) counsel did not appear because he had been on vacation, had taken medication, and thought the hearing was at 10:30 a.m.  The Trustee opposed the Motion to Reconsider  on November 6, 2013 (Dkt. No. 210).  The Trustee argued that the standard for reconsideration was not excusable neglect and, under the proper standard, the Motion to Reconsider had to be denied.  The Trustee also reiterated that JR never sought advance approval under Section 364(b) for the extension of credit and that the record did not support a finding of substantial contribution by JR.  The Motion to Reconsider was heard on November 19, 2013 and it is resolved by this Opinion.

---

[9] JR did not cite any law, statutory, case, or otherwise in the Administrative Claim Motion.

III.   <u>Analysis</u>

In the Motion to Reconsider, JR claims to rely upon both Federal Rule of Civil Procedure 59(e), which governs motions to alter or amend judgments and is made applicable to bankruptcy cases through Rule 9023, and Federal Rule of Civil Procedure 60, which governs motions for relief from judgments or orders and is made applicable through Rule 9024.   The initial question presented therefore is which rule applies, or do both?  Rule 9023 provides that a motion for a new trial or to alter or amend judgment "shall be filed . . . no later than 14 days after entry of judgment."  The Motion to Reconsider was filed thirteen days after the entry of the Order.  It is settled that "a motion filed under both Rule 59(e) and Rule 60(b) should be analyzed only under Rule 59(e) if it was filed no later than 10 days after entry of the adverse judgment and seeks to correct that judgment."[10]  *Robinson v Wix Filtration Corp*., LLC, 599 F.3d 403, 412 (4th Cir. 2010); *Small v Hunt*, 98 F.3d 789, 797 (4th Cir. 1996).  Applying *Wix*'s holding to the expanded deadline, JR's assertions need only be analyzed under Rule 59(e).

In *Pacific Ins. Co. v American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) the court stated:

> There are three grounds for amending an earlier judgment [under Rule 59(e)]: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.
>
> *        *        *
>
> Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.

---

[10] The ten (10) day filing deadline from the date of entry of an order was expanded to fourteen (14) days in the bankruptcy court and twenty-eight (28) days in the district court per the 2009 amendments. See Fed. R. Bankr. P. 9023 advisory committee's note; Fed. R. Civ. P. 59 advisory committee's note.

The Motion to Reconsider does not mention these binding standards. Instead, JR posited the following:

> [JR] requests that this Court vacate the Order denying the Administrative Claim Motion on the grounds of excusable neglect with respect to the error of [JR]'s counsel in failing to attend the hearing of October 15, 2013. To this end, [JR] relies upon the *Pincay v Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (*en banc*), *cert. denied*, 125 S. Ct. 1729 (2005), *citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) [sic].

Dkt. No. 208, 4-5.

Neither *Pioneer* nor *Pincay* grappled with Federal Rule of Civil Procedure 59(e). Instead, they examined the question of whether, in the absence of timely compliance, it is appropriate to grant an extension after a deadline fixed by a rule has expired. *Pincay*, 389 F.3d at 854 (*en banc* panel concludes that it was within the lower court's discretion to find excusable neglect under Federal Rule of Appellate Procedure 4(a)(5)(A) when a paralegal erroneously believed the law firm's clients had 60, instead of 30, days to appeal an adverse ruling); *Pioneer*, 507 U.S. at 395 (in exercising its discretion to determine whether a failure to meet a bankruptcy claims bar date fixed by rule can be overlooked on the ground of excusable neglect, and an untimely claim allowed, a court should consider equitable factors including those listed in the opinion).

JR did not miss a filing deadline fixed by a rule. Rather, JR failed to heed the Court's admonition to amend the Motion for Allowance of Administrative Claim to attempt to meet the Trustee's and West Pratt's well-taken objections, failed to file responses to those objections and likewise failed to attend the hearing on a date and time cleared in advance in open court. Neither *Pioneer* nor *Pincay* have any bearing on the circumstances presented by the Motion to Reconsider. Moreover, excusable neglect is not incorporated into Federal Rule of Civil

Procedure 59(e) as it was in the rules that controlled the outcomes of *Pincay* and *Pioneer*.

Instead, the relevant standards are set forth in *Pacific* and *Green*, *supra*.

In that regard, JR does not allege that the Order should be vacated because of an intervening change in controlling law or because of the existence of new evidence not available at trial. Nor does JR suggest that either a clear error of law has been committed or that manifest injustice has resulted. What the Motion to Reconsider does do, beyond giving an explanation for Mr. Drescher's failure to appear, is attempt for the first time to rely upon the statutory doctrine of substantial contribution. To the extent the resurrection of the Administrative Claim Motion is sought on that theory, JR's failure to raise it before the final hearing is fatal under *Pacific*.

Nevertheless, JR relies upon *In re On Tour, LLC*, 276 B.R. 407 (Bankr. D.Md. 2002) and *In re United Container LLC*, 305 B.R. 120 (Bankr. M.D. Fla. 2003) in support of its "substantial contribution" claim. In both cases, the question presented was whether non-insider, "arm's length", third-party creditors could rely upon the "substantial contribution" provision of Section 503(b)(D)(3), to recover some, or all, of their attorney's fees and related expenses devoted to filling crucial gaps in the functioning of the bankruptcy case where that work and effort redounded significantly to the benefit of all creditors. *On Tour*, 276 B.R. at 409-10 ("Had the petitioning creditors not acted as they had, the debtor would not have filed its schedules and statement of financial affairs. The case would have remained stranded in legal limbo."); *United Container*, 305 B.R. at 123-24 ("[T]he Creditors filled the leadership void that existed in the early stages of the case, and . . . the financial aspect of the case was salvaged only as a result of their efforts."). Both Courts held that the moving creditors should be rewarded for their efforts in enhancing the estate for the benefit of all and, as a result, administrative fees and expenses were awarded. In this case, the Administrative Claim Motion did not rely upon Section

503(b)(D)(3) or any other legal foundation and that is one of several reasons why JR was admonished to amend or supplement its papers.

Instead, the Administrative Claim Motion was rooted entirely in the Agreement. But the Agreement was entered into prior to the filing of the Petition and was not approved by the Court per Section 364(b).[11] Viewed in that light, any sums extended in reliance upon it at best resulted in only a general unsecured claim. Moreover, while the Agreement in part indicates JR will provide "consulting services" as an "independent contractor" it is plain that it actually memorializes either an investment or lending opportunity, or some blend thereof, intended to flow from putative insiders and return a significant monetary benefit to them in the form of a substantial share of either the profits or receipts.[12] The scenario described in the Administrative Claim Motion, and relied upon in the Agreement, had all the earmarks of an effort to capture a stake in an ongoing business for the personal benefit of the individuals behind JR. In exchange for its financial investment, the Agreement provides that JR is to receive the higher of seventy-five percent (75%) of the Debtor's profit or ten percent (10%) of client payments and the management positions of chief operating officer and chief financial officer. Agreement ¶¶ 3 and 8. The Agreement also appears to have a perpetual existence and mandates majority control of

---

[11] It would defy credulity to conclude that this alleged loan, made on the eve of bankruptcy in part to fund the Debtor's basic expenses, and accompanied by a turnover in management and control, was made in the "ordinary course" of the Debtor's business and therefore was insulated from advance court authorization under Section 364(a).

[12] Persons in control of a debtor are insiders. *See* Section 101(31). Given that status, the transaction must be subjected to strict scrutiny. *In re Living Hope Southwest Medical Services, LLC*, 450 B.R. 139, 150 (Bankr. W.D. Ark. 2011) (postpetition loan made by an insider to a debtor in possession private hospital that was not approved in advance under Section 364(a) would not be retroactively approved in the absence of a substantial showing under the applicable vertical and horizontal tests that establishes it was made in the ordinary course and a showing of extraordinary circumstances necessary to establish cause for the failure to secure advance approval); *see also In re Alpha Corp. of Va.*, 979 F.2d 847 (4th Cir. 1993). It has also been held with respect to the substantial contribution doctrine that "creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection." *Lebron v Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994). The Administrative Claim Motion did not satisfy even the initial burden of production for an administrative claim, *see United Container*. 305 B.R. at 126, let alone the far heavier burden that falls on insiders.

the Board in favor of JR.  Agreement ¶¶ 5, 6 and 18.  The fact that the Agreement included these self-protective benefits is one powerful reason why the Oversigned concluded the Administrative Claim Motion did not state a *prima facie* case for either a basic administrative claim or one for "substantial contribution."  This was made clear at the August 14th hearing and JR was admonished to regroup and do a better job of laying out its case in Order to (a) supply allegations that met the relevant standard (if possible) and (b) afford the objectors notice and an opportunity to effectively defend the assertions through discovery or otherwise.  Yet, because JR did not file amendments, did not reply and failed to appear at the hearing, these problems were never cured.

This is why JR would not prevail even if the Motion to Reconsider triggered Federal Rule of Civil Procedure 60(b).  Excusable neglect is one applicable standard under that rule.[13] However, while it has been applied liberally in the case of default judgments and Federal Rule of Civil Procedure Rule 55, *Augusta Fiberglass Coatings, Inc., v. Fodor Contracting Corp.,* 843 F. 2d 808 (4th Cir. 1988) ("[W]here default judgments are at issue . . . this court has taken an increasingly liberal view of Rule 60(b)."), such is not the case in other contexts. *Robinson,* 599 F. 3d at 413 ("A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1).").  With that in mind, this Court is not prepared to find that the neglect in this case excusable.  JR was put on notice that the Administrative Claim Motion had to be strengthened or it would be denied.  The missed hearing date and time were agreed to by JR to in open court.  The utter failure to act with diligence may be neglectful but it is not excusable.

Mr. Drescher falls on his sword in the Motion to Reconsider, blaming himself, his vacation and his medication for his failure to appear at the hearing.  While the Court appreciates

---

[13] Federal Rule of Civil Procedure 60(b)(1) provides that, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect."

his candor, and has sympathy for his dilemma, it cannot move the needle in JR's favor.  JR's claim was insufficient on its face.  It did not take the opportunity that was expressly extended to it to try and strengthen its position while also revealing the elements of its alleged claim to its opponents.  Then it failed to appear at the hearing.  Yet, it is not the failure to appear alone that binds JR but what went on before.  In this context, JR must live with these mis-steps.  *Universal Film Exchanges, Inc. v Lust,* 479 F. 2d 573, 576 (4th Cir. 1973) ("[U]nder our adversarial system of justice, the client must pay, at least initially, the penalty of his counsel's neglect.").  Therefore, reconsideration is unwarranted and the Motion to Reconsider shall be denied.  A separate order will be entered.

cc:    Debtor
       Chapter 11 Trustee
       Ronald J. Drescher, Esquire
       JR Health Care Associates, LLC


**End of Opinion**